UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

GREENEVILLE DIVISION

| | | |
|---|---|---|
| TIM DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:20-CV-00159-CEA |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARTER FOODS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff has filed a Motion for Conditional Collective Action and Class Action Certification [Doc. 45]. Defendants filed a Response in Opposition [Doc. 57]. Plaintiffs filed a Reply [Doc. 68] and Defendants filed a sur-reply [Doc. 74]. This motion was referred to the undersigned for a report and recommendation by the District Judge pursuant to 28 U.S.C. § 636(b). This matter is now ripe for resolution. For the reasons stated below, the undersigned **RECOMMENDS** that the portion of Plaintiff's Motion [Doc. 45] requesting conditional collective certification under the FLSA be **GRANTED** as set forth below, and the portion requesting class certification under Fed. R. Civ. P. 23 likewise be **GRANTED**.

## I.    PROCEDURAL BACKGROUND

On July 21, 2020, Plaintiffs Tim Davis and Niklaus Ryker Schleufer filed a Complaint [Doc. 1] individually and on behalf of similarly situated current and former employees of Defendant Charter Foods, Inc. ("Charter Foods") and two of its associated business entities, Defendants Charter Central, LLC ("Charter Central") and Charter Foods North, LLC ("Charter North") (hereinafter collectively referred to as "Charter"). The Complaint alleges collective

1

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.* ("PWPCL").

Defendants, as Yum! Brands franchisees, own over three hundred (300) fast food restaurants and quick service industry restaurants, namely Taco Bell, Long John Silver's, KFC, A&W, and Pizza Hut restaurants across twelve (12) states, including Pennsylvania. Defendants employ approximately 7,000 workers, with approximately 900 serving as Assistant General Managers ("AGMs"). The Complaint alleges that Defendants engaged in business practices that violated the rights of the Team Members and Shift Leads, specifically contending that Defendants misclassified their Assistant General Manager position as exempt under both federal and state wage and hour laws and in doing so failed to pay these employees proper overtime wages for work performed exceeding forty (40) hours per week.

Plaintiffs Davis and Schleufer were employed by Defendants as AGMs at Defendants' franchised fast-food restaurants during 2018 and 2019. They assert that due to Defendants' routine policies and practices they were required or permitted to work over forty (40) hours per workweek but were not compensated lawfully for those hours as required by the FLSA, PMWA, and PWPCL. The Complaint alleges that the job duties of AGMs include housekeeping, customer service, cash handling, and other non-exempt work and point out that AGMs are required to clock in and out at the beginning and end of their shift. The Complaint further alleges that while AGMs are scheduled for 50 hours per week, they are routinely allowed to work "off the clock" resulting in significant work in excess of the required 50-hour workweek. The Complaint states that despite being allowed or required to work more than 50 hours per week, AGMs are not permitted to stay on the clock beyond 50 hours and any "on the clock" hours beyond 50 per week were removed from the

centralized payroll system to ensure they would not be compensated. In summary, Plaintiffs contend that Defendants' practice is to not compensate AGMs in any fashion for hours worked over 50 per workweek, whether they work them on or off the clock, and not to pay them overtime for hours exceeding 40 per workweek.

Plaintiffs filed a Motion for Conditional Collective Action and Class Action Certification with supporting Memorandum [Docs. 45 and 46][1] on June 09, 2021, seeking certification under § 216(b) of the FLSA and requesting authorization to send notice to other members of the collective. Plaintiffs request that the Court conditionally certify a collective action class of all individuals who are or have been employed by Defendants as an AGM from three (3) years prior to the filing of the Complaint in this action through the date that a class is certified by the Court, so long as those individuals have worked more than forty (40) hours per week without being paid overtime rates. [Doc. 45]. Because Plaintiffs further allege that Defendants have violated the PMWA and PWPCL, Plaintiffs additionally ask the Court to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure consisting of all individuals who are or have been employed by Defendants as an AGM in the State of Pennsylvania from three (3) years prior to the filing of the Complaint in this action through the date that a class is certified by the Court, so long as those individuals have worked more than forty (40) hours per week without being paid overtime rates. *Id.* Defendants filed a Response in Opposition [Doc. 57] to Plaintiffs' requests to which Plaintiffs filed a Reply [Doc. 68]. Defendants then filed a Surreply and supporting brief. [Doc. 74]. Plaintiffs' Motion [Doc. 45] is now ripe for resolution.

---

[1] Some documents referenced contain multiple page numbers on them. All citations to page numbers refer to the sequential page number assigned to the document by CM/ECF located at the bottom of the page in blue text.

## II.     CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION

### a.  Standard of Law

The FLSA empowers employees to file suit against an employer for alleged FLSA violations on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Section 216(b) establishes two requirements for a representative action: 1) plaintiffs must be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Id.* (citing 29 U.S.C. § 216(b); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)). While the FLSA does not define "similarly situated," the Sixth Circuit Court of Appeals has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Plaintiffs will also be considered similarly situated if "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* The plaintiff bears the burden of establishing that the members of the putative class are similarly situated. *Id.*

"Courts typically use a 'two-phase inquiry' to determine 'whether proposed co-plaintiffs are, in fact, similarly situated for the purposes of the statute's requirements.'" *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-cv-145, 2019 WL 7755928, at *6 (E.D. Tenn. June 11, 2019) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017)). The first phase, known as the notice phase, occurs at the beginning of discovery. *Id.* The second phase takes place after notices and opt-in forms have been distributed and returned and discovery has been completed

4

if the defendant then moves for decertification of the conditional class. *Beasley v. Over Easy Mgmt., Inc.*, No. 1:14-cv-366, 2016 WL 11503028, at *2-3 (E.D. Tenn. April 8, 2016) (citing *Comer*, 454 F.3d at 547). During the notice phase, the court determines whether conditional certification is appropriate and whether notice of the suit should be distributed to similarly situated putative class members. *Id.* The plaintiff must show that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (cleaned up). This "fairly lenient standard" is satisfied if the lead plaintiff makes a "modest factual showing that he and potential co-plaintiffs are similarly situated with respect to the conduct alleged in the complaint." *Manlove*, 2019 WL 7755928, at *6 (citing *Comer*, 454 F.3d at 547). The court does not decide substantive issues going to the merits of the case at this stage. *Id.* This lenient standard generally results in conditional certification of a representative class during the notice phase of the class certification process. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). The purpose of conditional certification during this stage is "to provide notice to potential plaintiffs and to present them with an opportunity to opt-in." *Beasley*, 2016 WL 11503028, at *3 (quoting *Lindberg v. UHS of Lakeside*, 761 F. Supp. 2d 752, 757-58 (W.D. Tenn. 2011)).

During the second stage, following discovery, the court must more closely examine the question of whether the members of the class are similarly situated. *Comer*, 454 F.3d at 546. At that stage, "[p]laintiffs must produce more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). Factors considered at this stage include "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (internal quotation marks omitted). In cases where the

5

parties have conducted some, but not all, discovery, certain district courts within the Sixth Circuit have applied an intermediate, or hybrid, standard. *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-cv-674, 2018 WL 11225871, at *3 (E.D. Tenn. March 3, 2018) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011)); *see also Bowman v. Crossmark, Inc.*, No. 3:09-cv-16, 2010 WL 2835719, at *4-5 (E.D. Tenn. July 19, 2010) (holding that where substantial discovery had been completed the case is not in the typical "notice stage" and application of the lenient standard employed at the notice stage is not appropriate). "After some amount of discovery, the conditional certification goes 'beyond the stage one evidentiary boundaries of the complaint's allegations and supporting affidavits.'" *Davis*, No. 3:16-cv-674, 2018 WL 11225871, at *3 (citing *Creely*, 789 F. Supp. 2d at 826). Under this hybrid review, the plaintiff is required to make a "modest plus" factual showing. *Id.* Specifically, the court must determine whether the plaintiff's factual showing would "tend to make it more likely that a class of similarly situated employees exists by comparing the plaintiff's allegations in [the] complaints with the factual record assembled." *Id.* (internal quotation marks omitted). However, as the factual record has not been fully developed, the court should not consider the merits of a plaintiff's claims under this standard and should resolve any gaps or doubts in the evidence in favor of the plaintiff "in light of the equitable goals and policies embodied in the FLSA." *Creely*, 789 F. Supp. 2d at 826; *see also Davis*, 2018 WL 11225871, at *3.

In this case, the Court has determined that given the amount of discovery which has taken place, the hybrid standard of review is appropriate. Plaintiffs filed the Complaint on July 21, 2020 [Doc. 1] and a scheduling order was issued on December 9, 2020 [Doc. 34]. The Motion for Conditional Collective Action and Class Action Certification [Doc. 45] was filed on June 9, 2021, nearly a year after the Complaint was filed and six months after a scheduling order was entered.

6

As of June 2021, three depositions had been taken by Defendants and one by Plaintiffs, several declarations have been submitted, and almost 3,000 pages of documents had been produced to Plaintiffs by Defendants in response to written discovery. [Doc. 57, p. 18]. The scope of discovery that has already taken place is further evidenced by the sixteen (16) exhibits Plaintiffs submitted in support of their motion [Docs. 46, 52]. Moreover, Plaintiffs have not asserted that Defendants have created any roadblocks in moving the discovery process forward. Taken as a whole, the Court concludes that this matter has progressed beyond the typical notice phase, which occurs "at the beginning of discovery." *Comer*, 454 F.3d at 546. Accordingly, the Court will apply the hybrid, or "modest plus," standard in considering Plaintiffs' Motion for Conditional Collective Action Certification.

In their surreply brief, Defendants assert the that the Sixth Circuit has never expressly adopted the two-step collective certification standard described above that originated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), but has merely acknowledged the use of this framework by district courts. [Doc. 74, citing *Holder v. A&L Home Care & Training Ctr., LLC*, No. 1:20-cv-757, 2021 WL 3400654, at *5 (S.D. Ohio Aug. 4, 2021)]. The propriety of this bifurcated conditional certification process was recently certified for interlocutory appeal to the Sixth Circuit by the Southern District of Ohio. *Holder*, 2021 WL 3400654, at *12. As a result, Defendants have requested that if the Court applies the lenient standard proscribed by the two-step certification process and certifies a collection that the certification opinion include language permitting interlocutory appeal pursuant to 28 U.S.C. § 1292(b). [Doc. 74, p. 2]. This is a determination properly left to the District Court, so that request will not be addressed at this juncture. *See* 28 U.S.C. § 1292(b).

### b. Analysis

Plaintiffs argue that Charter AGMs are similarly situated because they were uniformly misclassified as salary exempt employees as part of a company-wide FLSA-violating policy. Plaintiffs contend that Charter's uniform reclassification of all AGMs as nonexempt hourly employees as of January 1, 2020, further bolsters their position that all AGMs are similarly situated[2]. [Doc. 46, p. 12]. In response, Defendants argue that members of the putative AGM class are not similarly situated because the record demonstrates that each individual AGM had unique experiences, making it impossible to address the question of whether AGMs were misclassified at a company-wide level via a class or collective basis. [Doc. 57, p. 2]. Instead, Defendants claim that resolution of the issue requires an individual inquiry into each AGM's experience[3]. *Id.* However, the Court notes that at this stage Plaintiffs must only show that their position is "similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 547; *see also Wiggins v. Jedson Eng'g, Inc.*, No. 1:19-cv-00354, 2020 WL 6993858, at *5 (E.D. Tenn. Aug. 27, 2020) ("'[A] common policy or practice' may outweigh the 'factual differences and variations in plaintiffs' employment settings' when determining whether a collective action is proper") (quoting *Johnson v. Koch Foods, Inc.*, 657 F. Supp. 2d 951, 956 (E.D. Tenn. 2009). Further, "[d]isparate factual and employment settings of the individual plaintiffs' should be considered at the second stage of the analysis." *Loomis v. Unum Grp. Corp.*, 539 F. Supp. 3d 898, 909 (E.D. Tenn. 2021) (quoting *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006)). Indeed, based upon the standard Defendants propose it would be impossible for a collective or class to ever be

---

[2] Defendants assert that the sole reason for reclassification of AGMs was the increased minimum salary requirement for exempt employees and had nothing to do with the duties of the AGMs.

[3] Defendants provide evidence that Plaintiffs named in the action experienced differences in atmosphere and certain job responsibilities when working at different stores; however, the types of differences alleged are beyond this Court's consideration when determining whether to conditionally certify a class.

certified, as members of any group will always have individualized experiences to some degree.

Additionally, Defendants argue that Plaintiffs must demonstrate they were misclassified under the FLSA which they are unable to do because Plaintiffs lack sufficient knowledge beyond their own personal experiences to demonstrate that Charter's facially lawful AGM classification policy was unlawful in practice. [Doc. 57, p. 19]. This argument does not carry the day because determining whether AGMs were misclassified as salaried exempt employees goes to the merits of Plaintiffs' claims and at the conditional certification stage, "a court should not consider the substance of a putative class's claims, even when conducting a hybrid standard of review." *Colonial Freight*, 2018 WL 11225871, at *4 (citing *Creely*, 789 F. Supp. 2d at 826-27; *Heldman v. King Pharms. Inc.*, No. 3-10-1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011)); *see also Wiggins v. Jedson Eng'g, Inc.*, 2020 WL 6993858, at *5 (declining to consider Defendant's asserted salary basis exemption under the FLSA because such issues are to be addressed at the second stage of the certification process).

At this stage of the proceedings, the Court must determine whether Plaintiffs have demonstrated that members of the putative class are similarly situated by comparing the allegations in the complaints with the factual record assembled. *Id.* Plaintiffs allege that they and other Charter AGMs were subjected to the same corporate misclassification policy, under which Charter misclassified AGMs as salaried exempt employees and did not pay them overtime despite AGMs working a considerable amount of overtime hours. [Doc. 45, p. 1]. Charter acknowledged in a 30(b)(6) deposition that there is a single AGM job description and the expected job duties of AGMs are the same across all brands of Charter restaurants. [Doc. 46-2, p. 14]. Additionally, Charter acknowledged that prior to January 1, 2020, Charter classified all AGMs as salaried exempt employees. Effective January 1, 2020, Charter reclassified all AGMs to hourly nonexempt

employees. [Doc. 46-2, p. 31]. This action is significant evidence that the proposed collective is similarly situated. *See Wlotkowski v. Michigan Bell Tel. Co.,* 267 F.R.D. 213, 217-18 (E.D. Mich. 2010).

In terms of other similarities between members of the putative class, Plaintiffs note that the expected workweek for AGMs both before and after reclassification was five days per week, ten hours per day. [Doc. 46-2, p. 43]. This 50-hour requirement was the same for all AGMs regardless of experience, length of employment, size of restaurant, hours of operation, etc. [Doc. 46-3, p. 108]. Moreover, the AGMs are all subject to the same "extensive policies, procedures, and work rules." [Doc. 46, p. 13-14]. Further, Defendants use the same uniform training materials and e-learning modules to train their AGMs. [Docs. 46, p. 15 and 46-2, p. 34]. Although there are some brand-based training differences, the scope and time of training is similar across Defendants' brands. *Id.* Finally, all AGMs are evaluated through an annual performance appraisal and Defendants use the same standards and metrics regardless of the location, hours of operation, type, or size of restaurant; an AGM's prior employment or tenure with the company; and the general manager under whom the AGM worked. [Doc. 46-3, p. 97, 103]. Lastly, Plaintiffs note that Defendants' restaurants are all operated using a very centralized and tightly controlled corporate structure. [Doc. 46, p. 14].

Additionally, Plaintiffs have demonstrated under the applicable hybrid standard that the putative class of AGMs are similarly situated as to their primary job duties. Specifically, Plaintiff Davis testified in his deposition that 90-100% of his job duties consisted of performing the same tasks that hourly employees generally do and that this was the case in all three Charter restaurants in which he worked. [Doc. 46-4, p. 14-15]. He stated that his only managerial duty was to answer questions. *Id.* Similarly, Plaintiff Schleufer testified during his deposition that he worked as an AGM in at least 3 Taco Bell restaurants owned by Charter but had no managerial duties and instead

10

performed the duties of a crew member. [Doc. 46-5, p. 8-9]. Further, Schleufer stated that although his title was AGM, his "job was to be on the line, and that's all [he] was to do…[t]hat's what [he] was instructed to do." *Id.* Opt-in Plaintiff Lewis also testified that during her time as an AGM she did not do any ordering or scheduling, manage inventory, or make cash deposits. [Doc. 63-4, p. 10]. Lewis testified she was "stuck making food the whole time..." *Id.* at 11/29.

Finally, the AGM job description lists the ability to sweep and mop floors, dust shelves, carry out trash, clean parking lot and grounds, and tolerate standing, walking, lifting up to 50 lbs. and stooping during 80% of shift time as "essential functions" of the AGM position[4]. [Doc. 52, p. 7; Doc. 52-1, p. 6]. "Numerous courts have recognized the probative value of company job descriptions in considering whether employees are similarly situated for the purpose of conditional certification." *Loomis*, 539 F. Supp. 3d at 908 (citing *Saddler v. Memphis City Sch.*, No. 12-cv-2232-JTF-tmp, 2013 WL 12100720, at *5 (W.D. Tenn. Feb. 4, 2013)).

Given the above, the Court finds that Plaintiffs have met their burden of establishing that the putative collective of AGMs are similarly situated. They were all subject to the same alleged FLSA-violating policy: misclassification as salaried exempt employees who were not paid overtime wages despite regularly working more than 40 hours per workweek. *See Loomis,* 539 F. Supp.3d at 909 (holding plaintiffs to be similarly situated for purposes of conditional certification for a misclassification claim based upon declarations of eight former employees and job descriptions); *Colonial Freight*, 2018 WL 11225871, at *4 (finding Driver-Trainees to be similarly situated because they were subject to the same alleged FLSA-violating misclassification policy). Plaintiffs have further demonstrated that as a preliminary matter, Defendants' AGMs were

---

[4] Requiring AGMs to perform these tasks, without more, would not prevent them from being classified as exempt. Instead, this is merely one factor for the Court to consider in assessing the totality of the circumstances in light of the record.

11

similarly situated with regard to general training received, job duties, hours worked, corporate expectations for how work is to be performed, and the evaluation of their performance.

Defendants contend that even if the Court rejects their argument that the AGMs' unique experiences prevent the Court from finding the putative class is similarly situated, certification is still not appropriate because the proof submitted is limited to the geographic region in which Named Plaintiffs worked. [Doc. 57, p. 26]. They make this assertion in reliance on *Thompson v. RGT Mgmt., Inc.*, No. 2:11-cv-02573-AJT, 2012 WL 3261059 (W.D. Tenn. June 8, 2012), where the Court limited the scope of conditional certification to the three stores in which the plaintiff herself had worked. *Id.* at *3. However, there are notable differences between the plaintiff in *Thompson* and the case at hand. In *Thompson,* the plaintiff "failed to offer any evidence from any other assistant general manager [including the opt-in plaintiffs] to support her assertion that all assistant managers are, in fact, similarly situated and improperly classified." *Id.* at *1. The *Thompson* Court further noted that the only evidence of a widespread violation was Thompson's own testimony that she "spent the majority of her time performing non-managerial duties at the Taco Bell where she was employed." *Id.* at *2-3. Additionally, the defendant provided affidavits from seven other Taco Bell assistant general managers, including those where Thompson had been employed, that contradicted Thompson's claims and indicated they did not spend that majority of their time performing "team work." *Id*. While the *Thompson* Court did not find it appropriate to conditionally certify as broad a class as was requested by Thompson, the Court did certify the class as to the three restaurants where she worked, even in the face of affidavits which attempted to directly refute her allegations. In denying her request to certify a broader class, the court placed great emphasis on the fact that Thompson had provided no evidence from other AGMs as to the duties they performed.

In contrast, in the case at hand multiple AGMs have provided testimony as to the very limited managerial tasks they performed despite working in several of Defendants' restaurants. Although Defendants have provided excerpted deposition testimony and an affidavit from Defendants' corporate representative and second in command for operations, Wayne Ferguson, affidavits from area coach Michael Brungo and field training coach Michelle Bindas, and affidavits from several of Defendants' upper level managers submitted in the Pennsylvania action, all of which purport to address the job duties performed by AGMs and differences between store locations, the Court does not find this proof to be of the type produced by Defendant in *Thompson*. [Doc. 46-2, 3 and 63-5, 6, 7, 8, 9, 10, 11, 12, and 13]. No affidavit or deposition testimony was submitted by a current AGM to counter Plaintiffs' testimony. Additionally, neither the testimony of Mr. Ferguson nor the affidavits submitted are as direct in addressing the allegations made by Plaintiffs in this action as they were in the *Thompson* case. Instead, the affidavits were submitted by higher level management[5] that would have been in-and-out of the Defendants' stores rather than being in any given store on a shift-to-shift basis to observe the duties routinely performed by the AGMs. The affidavit which comes closest to refuting Plaintiffs' allegations is the one submitted by Mr. Brungo because he was in the stores in which some of Plaintiffs worked on a somewhat regular basis.

This Court further notes that Defendants in this case have an issue similar to the one had by the plaintiff in *Thompson*. In *Thompson* the court emphasized the fact that the plaintiff did not provide any affidavits from other AGMs in support of her allegations against the defendant. In the matter at hand, the Court finds it significant that despite the extensive number of AGMs employed

---

[5] The Court notes that some of these higher-level managers had served as AGMs in the past but not during the relevant timeframe, while the affidavits submitted in *Thompson* were provided by current AGMs.

by Defendants, they have not provided an affidavit from any one of them to counter Plaintiffs' allegations.

Addressing further the issue of geographic area for conditional certification, the Court once again returns to the centralized nature of Defendants' operations. While recognizing some of the differences Defendants' affidavits indicate, Mr. Ferguson in his role as second-in-command for operations testified that Defendants share a common owner and management structure, share common operations, and have a centralized human resources office, including processing of payroll. [Doc. 46-2, p. 10-11]. He further stated that "in the field" all three Defendants are treated the same and that it is only in the office that they are treated separately. [*Id.,* p. 15]. While Defendants have demonstrated certain differences from store-to-store, in terms of size, gross revenue, customer base and the like, at this juncture in the litigation the Court finds that they are insufficient to outweigh the substantial similarities in the functions performed by Defendants' AGMs.

Finally, Defendants allege that the Court should not conditionally certify a collective action because there is already one pending in the Western District of Pennsylvania which addresses Plaintiffs' claims. Specifically, that court certified a collective of all AGMs who worked for Charter nationwide between January 10, 2017, and January 1, 2020, so long as they worked more than 40 hours during a workweek. *Gallagher v. Charter Foods, Inc.*, No. 2:20-cv-00049, 2021 WL 2581153, at *5 (W.D. Pa. June 23, 2021). Defendants contend that to conditionally certify a class here as well will result in a duplication of efforts. [Doc. 74, p. 5]. Plaintiffs respond by alleging that any duplication of efforts or judicial resources can be eliminated by ordering notice to be sent only to putative AGM class members who have not opted into *Gallagher*. [Doc. 68, p. 8]. During oral arguments, the parties advised the Court that only about half of the putative plaintiffs in the *Gallagher* collective had opted into the suit. In arguing for conditional certification in this action,

14

Plaintiffs further assert that there is a risk of partial decertification in *Gallagher* given the Sixth Circuit's recent holding that when "nonresidential plaintiffs opt into a putative collective action under the FLSA, a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum State." *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 397 (6th Cir. 2021). Plaintiffs would not face a similar issue in the instant action because Defendants' operations are headquartered within this District. They further point out that one of the defendants sued in this action, Charter Foods North, LLC, is not a party to the Pennsylvania action. [Doc. 46, p. 22]. Still, Defendants aptly note that *Gallagher* has already been conditionally certified to include a nationwide collective, and Defendants are subject to personal jurisdiction in that case pursuant to current Third Circuit and Pennsylvania jurisprudence. [Doc. 75, p. 5].

The Court finds merit in both arguments. On the one hand, Defendants are currently subject to personal jurisdiction in *Gallagher* pursuant to that Circuit's binding jurisprudence and it would be inappropriate for this Court to speculate regarding whether future developments in the law of personal jurisdiction might impact the Western District of Pennsylvania's ability to maintain personal jurisdiction over Defendants. On the other hand, only approximately one-half of the eligible plaintiffs in *Gallagher* opted into that case, leaving many putative plaintiffs with unpursued claims at this juncture. Certifying a collective that permits only those individuals who have not opted into the Pennsylvania class action to pursue claims would not result in duplication of efforts or resources. Additionally, this forum should be more convenient for Defendants in that they are headquartered in this District. Finally, the Court cannot overlook the fact that an additional defendant is before the Court in this action. Therefore, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Conditional Collective Action under the FLSA be **GRANTED** such that the case is conditionally certified as a collective action as to the following putative class:

15

All individuals who are or have been employed by Defendants as an Assistant General Manager at any time from July 21, 2017, through January 1, 2020, who worked more than 40 hours during one or more workweeks and who are not participating in *Gallagher v. Charter Foods, Inc.*, 2021 WL 2581153 (W.D. Pa. June 23, 2021) as a named or opt-in plaintiff.

### c. Notice

The undersigned further RECOMMENDS that the parties be directed to provide an agreed-upon notice to the collective of Charter AGMs described herein related to their ability to opt into the FLSA collective action within **fourteen days** from the date an Order conditionally certifying the class is entered by the District Court. To the extent the parties are unable to agree, Plaintiff should file a proposed notice to which Defendants may respond with objections.

## III. CLASS ACTION CERTIFICATION

### a. Standard of Law

In addition to conditional collective action certification under the FLSA, Plaintiffs also seek class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure for alleged violations of the PMWA and PWPCL. "A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). However, Rule 23 of the Federal Rules of Civil Procedure "establishes strict requirements for class certification, obligating prospective class-action plaintiffs to satisfy all of the conditions of Rule 23(a) and come within one provision of Rule 23(b)." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016). The four "threshold requirements" that are applicable to all class actions are:

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Id.* at 1089-1090 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Additionally, for class action certification to be proper Plaintiffs must satisfy at least one of the three requirements enumerated in Rule 23(b). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that they demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available means for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Whirlpool*, 722 F.3d at 851. Unlike FLSA conditional certification, courts must undertake "rigorous analysis" in determining whether to certify a class, which will sometimes entail some analysis of the merits of the underlying claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Still, "permissible inquiry into the merits of the plaintiffs' claims at the class certification stage is limited." *Whirlpool*, 722 F.3d at 851.

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

Pennsylvania has state wage and hour laws that contain the same requirements as the FLSA. Specifically, the PMWA requires that "each employee shall be paid for overtime not less than 1-1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek" with an exception for persons employed in a "bona fide executive, administrative, or professional capacity." 34 Pa. Code § 231.41; 43 Pa. Stat. Ann. § 333.105. Under the PMWA,

plaintiffs may recover actual damages, attorney fees, and costs. *See* 43 Pa. Stat. Ann. § 333.113. Similarly, the PWPCL sets forth requirements and procedures that employers must follow regarding wage payments to employees, as well as proscribing a means of recovery for employees who did not receive all wages due. *See* 43 Pa. Stat. Ann. §§ 260.1 *et seq.*

Plaintiffs seek Rule 23 certification of a class of all AGMs employed by Defendants within the Commonwealth of Pennsylvania from three (3) years prior to the filing of the Complaint in this matter through the date of certification who have worked more than 40 hours per week without being paid overtime rates. [Doc. 46, p. 24]. Plaintiffs assert Defendants' violations of both the PMWA and PWPCL—stemming from the misclassification of AGMs and failure to pay overtime—are common to the class and predominate over and are superior to any questions affecting only individual members of the proposed class. [Doc. 46, p. 24-27]. Defendants respond that class certification should be denied because Plaintiffs are inadequate class representatives for the PMWA and PWPCL. [Doc. 57, p. 28]. Defendants further argue that Plaintiffs have not met the commonality or typicality requirements of Rule 23(a), nor have they met the predominance and superiority requirements of Rule 23(b)(3). *Id.* at p. 28-35.

### b. Rule 23(a) Requirements

#### i. Numerosity

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs admit that at this juncture they do not know precisely how many AGMs Charter employed within Pennsylvania during the relevant period. [Doc. 46, p. 17]. At the same time, Plaintiffs asserts that it is reasonable to infer that there are enough prospective plaintiffs to satisfy the numerosity requirement. In his declaration filed by Defendants in opposition to class certification, Wayne Ferguson, Defendants'

18

second in command for operations stated that there were approximately 1,200 current and former AGMs employed by Defendants over a three-year period in their roughly 300 restaurants located in 12 states. [Doc. 59-10, p. 17]. Defendants did not challenge Plaintiffs' satisfaction of the numerosity requirement. *See* [Doc. 57, p. 28-35].

"While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected [individuals] are sufficient to satisfy this requirement." *Whirlpool*, 722 F.3d at 852. Plaintiffs argue that despite not having an exact number of putative plaintiffs in the requested class, the Court can infer that numerosity is met based on the total number of AGMs employed by Charter nationwide during the relevant period. However, this District has previously held that speculative evidence regarding the number of putative class members is insufficient for a finding of numerosity because the "impracticality of joinder must be positively shown, and cannot be speculative." *Tipton v. CSX Transp., Inc.*, No. 3:15-cv-311, 2017 WL 10398077, at *3-5 (E.D. Tenn. Sept. 26, 2017) (quoting *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009) and citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Haynes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3rd Cir. 2013) ("Speaking more generally, where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."). While the number of AGMs employed by Charter in Pennsylvania during the relevant time is not specifically enumerated in the record before the Court, that does not necessarily mean that the Plaintiffs have failed to demonstrate numerosity as required by Rule 23(a)(1). *See Tipton,* 2017 WL 10398077, at *5 (finding that information about the numbers of people residing in a specific geographic proximity alone was insufficient to demonstrate numerosity). *But see Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 541 (6th Cir. 2012) (holding that a court may use knowledge and common sense to infer numbers from the facts

before it in considering potential class size). Additionally, the Court notes that the Sixth Circuit has previously held that a class of as few as 35 was sufficient to meet the numerosity requirement, and the Court cannot fathom under the facts already before the Court that the number of AGMs employed by Defendants in Pennsylvania during the requisite timeframe could be less than this number. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) (referring to *Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974)). Still, the Court finds it necessary to address other considerations before determining whether Plaintiffs have met their burden as to numerosity.

"When considering whether joinder would be practicable in a given case, courts may consider 'ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion' among other things.'" *Turnage,* 307 F. App'x at 921 (quoting *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993)). Weighing against a finding that joinder is impracticable is the likely ease of identifying plaintiffs due to Defendants' centralized human resources and payroll processing functions. Weighing in favor of a finding of impracticability is that there are likely to be a considerable number of potential class members who are no longer employed by Defendants given the transitory nature of the position at issue, which would make it more difficult to determine current addresses for those individuals. Further, the potential plaintiffs are spread over a large geographic area—the entire state of Pennsylvania—without accounting for the possibility that at least some putative class members may no longer live within Pennsylvania at this time.

Additionally, in *Swigart v. Fifth Third Bank,* 288 F.R.D. 177, 183 (S.D. Ohio 2012), when considering whether to certify a class under similar circumstances, the court observed that in employment actions a "fear of adverse impact at work for" those members of the putative class

still employed by a defendant can serve to make joinder impracticable. *See also Ganci v. MBF Inspection Servs., Inc.* 323 F.R.D. 249, 256 (S.D. Ohio 2017). In the instant action, a significant number of putative class members will likely remain employed by Defendants.

When taken together, and in conjunction with the fact that Defendants did not actively argue against Plaintiffs' satisfaction of this requirement, the Court finds in balancing the relevant factors, they demonstrate the impracticality of joinder. As such, Plaintiffs have satisfied the "numerosity" requirement of Rule 23(a)(1).

### ii. Commonality and Typicality

Rule 23(a) also requires that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. 23(a)(2)-(3). These requirements are commonly referred to as "commonality" and "typicality." *See Whitlock*, 843 F.3d at 1089-90. Commonality and typicality "tend to merge" in practice as they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Whirlpool*, 722 F.3d at 853 (quoting *Dukes*, 564 U.S. at 349 n.5).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'…This does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-350 (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)) (internal citations omitted). Rather, the plaintiffs' claims "must depend upon a common contention…[that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Id.* at 350. The crucial inquiry for commonality is whether the class-wide proceeding has the capacity to provide common answers to resolve the litigation. *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013). Similarly, "[t]ypicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "This requirement [e]nsures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852-53.

Plaintiffs argue that the Pennsylvania AGMs have in common questions of law and fact, including whether they were properly classified as salaried non-exempt employees; whether they mostly performed manual, non-exempt work; whether they worked overtime; and whether they are owed damages for unpaid overtime work. [Doc. 46, p. 18]. In response, Defendants, relying on *Davis v. Cintas Corp.*, 717 F.3d 476, 489 (6th Cir. 2013), argue that "[d]etermining whether each proposed class member was properly classified as exempt and/or whether each was paid for all purported overtime hours worked would require individual inquiries into each [AGM's] duties, hours and payments" which they contend "is fatal to commonality." [Doc. 57, p. 33].

As an initial matter, the Court notes that there are reasonable arguments both for and against finding commonality in the instant action, and Sixth Circuit precedent addressing the specific issues presented here is limited. With that said, the Court finds that the facts and legal issues presented in *Davis v. Cintas,* 717 F.3d at 489, are not sufficiently analogous to control the outcome of the instant action. In *Davis v. Cintas,*[6] plaintiffs alleged gender discrimination and asked the Court to certify a class of females who had applied for but been denied a position as service-sales-

---

[6]  The Court is providing the full case name where proper citation formatting would otherwise call for referring to the case simply as *Davis* to avoid confusion given that the lead plaintiff's name in this action is also Davis.

representatives. Cintas centralized much of its operations as do Defendants here. "'Cintas operations use[d] the same terminology, use[d] the same forms and paperwork, and 'run their stores' the same way.'" *Id.* at 480 (quoting the district court). At the same time, in refusing to certify a class in *Cintas*, the Court noted that its decision was based primarily on the fact that "'the hiring process...is conducted by thousands of Cintas managers at hundreds of Cintas facilities.'" *Id.* at 487 (quoting the district court). In other words, the question was whether females were being discriminated against in the hiring process and to determine the answer to that question, they had to look to individual hiring decisions made at the location level because the individual managers made the decision.

As referenced above, "a plaintiff's claims must depend upon a common contention of such a nature that it is capable of classwide resolution." *Dukes,* 564 U.S. at 350. In the case at hand, the primary question is whether Defendants' AGMs were misclassified as exempt. Whereas in *Davis v. Cintas* the primary issue involved hiring decisions made at the individual store level, Defendants in the instant action made the decision to classify all AGMs as exempt at the corporate level. None of Defendants' employees had the ability to determine on an individual basis that an AGM should be classified otherwise. Defendants again treated all AGMs as a single group when they later reclassified the AGM position as non-exempt.[7]

Defendants attempt to turn the decision into an employee-by-employee inquiry by contending that different AGMs performed different job duties, and that those duties depended primarily on the store manager for whom they worked. The Court finds that *Swigart v. Fifth Third*

---

[7] Defendants claim that they made the decision to reclassify AGMs after a change in the minimum salary necessary for exempt status was raised; however, Plaintiffs challenge that contention noting through questioning of Defendants' corporate representative during depositions that many of Defendants' AGMs were already making more than the new minimum salary and for those who weren't they suggest the difference was not significant enough to be the justification for the reclassification. [Doc. 46-2, p. 40-41].

*Bank,* 288 F.R.D. 177, 183 (S.D. Ohio 2012) provides a more analogous fact pattern than *Davis v. Cintas* and is instructive. In *Swigart,* a group of mortgage loan officers asserted that Defendant was guilty of violating the FLSA by improperly classifying them as exempt. In addressing commonality, the court noted that misclassification cases are routinely certified because "the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class." *Id.* at 184. Just as Defendants do here, the defendant in *Swigart* contended that there were many factual differences between the employees' work situations which would impact whether they were fairly classified as exempt. *Id.* In rejecting that argument, the court noted that defendant had treated these officers as a homogenous group in originally classifying them as exempt after conducting a blanket audit and then in later reclassifying them as non-exempt. *Id.* The court observed that if the defendant had deemed it appropriate to treat all employees serving as loan officers in the same way, it stood to reason that "whether those decisions were appropriate can likely be determined based on the same kind of common proof that Defendant used to make the decision in the first place." *Id.; see also Fenley v. Wood Grp. Mustang, Inc.,* 325 F.R.D. 232 (S.D. Ohio 2018) (certifying a class of inspectors who alleged misclassification as exempt after considering the proof before the court at the time of certification despite the defendant's argument that the inspectors' individualized duties, geographic locations, and employer supervision required individual inquiries,); *Hendricks v. Total Quality Logistics, LLC,* No. 1:10-cv-00646, 2014 WL 1888647 *13 (S.D. Ohio, July 17, 2014) (finding certification appropriate where misclassification was alleged even where the defendants attempted to demonstrate that duties varied widely and determining that the mere fact that duties may change from time to time and a basic level of independent thought and discretion may be

exercised did not mean that "responsibilities were so individualized as to render the common determination of exempt status impractical.")

While the Court acknowledges that Plaintiffs have testified to certain differences in their responsibilities depending on the store to which they were assigned and the way the store was run by the general manager, on balance at this juncture the Court finds that the Plaintiffs' testimony when taken as a whole demonstrates that their duties were sufficiently similar to justify finding commonality. The primary duties Plaintiffs described performing and the time they spent performing them would not have qualified them as exempt. While Defendants have attempted to refute this testimony via testimony from their higher-level management, they have offered no testimony from other AGMs or even from individual store managers which would refute it. To reject Plaintiffs' claims of commonality would require the Court to address the facts at a deeper level than what is permitted when considering whether to certify a class. *See Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

As to typicality, the claims of Plaintiffs and the proposed class members, as well as Defendants' asserted defenses, all arise from Defendants' decision to classify AGMs as exempt from overtime pay requirements. Defendants argue that "[p]laintiffs' theory that the ultimate question of liability satisfies the typicality requirement is overly broad and unworkable." [Doc. 57, p. 33]. Defendants cite no legal authority in support of this contention. Where "'it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims'" *Swigart,* 288 F.R.D. at 185 (quoting *Laichev v. JBM, Inc.,* 269 F.R.D. 633, 640-41 (S.D. Ohio 2008)). Because all putative class members state the same claim

and seek the same relief, the Court finds that the claims asserted meet the typicality requirement set forth in Rule 23(a)(3).

### iii. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of this requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)) (internal quotation marks omitted). "The Sixth Circuit has articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 576 (E.D. Tenn. 2014) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)). In addition, the Court should "determine whether class counsel are qualified, experienced, and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotation mark omitted).

As previously stated, named Plaintiffs were AGMs employed by Charter in Pennsylvania during the relevant timeframe who claim they were misclassified as salaried exempt employees and worked overtime for which they should have been compensated. Plaintiffs have retained counsel experienced in wage and hour litigation to advance these interests. [Doc. 46, p. 19 (citing *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012) *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (noting that it appears Stueve Siegel Hanson, a member of Plaintiffs' representation team in this matter, appears to have experience of unmatched depth in

26

matters of wage-hour class actions))]. While Defendants argued that Plaintiffs do not meet the commonality or typicality requirements of Rule 23(a), they did not provide any reasons why Plaintiffs do not satisfy the adequacy of representation requirement nor has the Court identified any concerns of this nature. Plaintiffs have demonstrated that they have common interests with unnamed members of the class, will vigorously prosecute the interests of the class through qualified counsel, and current counsel for Plaintiffs is qualified, experienced, and generally able to conduct the litigation. Accordingly, the Court finds that Plaintiffs have met their burden of demonstrating adequacy of representation.

### c. Rule 23(b) Requirements

Rule 23(b)(3) requires Plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" by carefully examining the relationship between common questions and individual questions in a case. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem*, 521 U.S. at 623).

> An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.

*Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th Ed. 2012)). Simply put, predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*

27

Defendants argue that the predominance element is not met here by repeating the argument that individual inquiries are required to determine whether each member was properly classified as exempt. Additionally, Defendants contend that should it be determined that AGMs were misclassified, it will be necessary to make individual determinations as to how many overtime hours were worked by each AGM and argue these issues predominate over common issues. Defendants point to *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), an antitrust case brought by cable subscribers alleging a business strategy employed by Comcast resulted in lessened competition and supra-competitive pricing, in support of these arguments. There, the Supreme Court reversed a decision to certify a class because "[q]uestions of individual damage calculations [would] inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. However, as the Court has already noted, the core issue here is whether Defendants misclassified their AGMs as exempt employees. Moreover, the damages Plaintiffs are seeking are a remedy, not an element of liability. Defendants' argument overlooks the fact that the predominate question of liability can be determined on a class-wide basis by determining whether Plaintiffs were indeed misclassified. *See Colonial Freight*. No. 2018 WL 11225871, at *9 (citing *Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 284-85 (N.D. Ill. 2005)). At least at this juncture, Plaintiffs have demonstrated that this issue can be addressed on a class-wide basis via common proof. As such, the Court finds that this common question predominates over any questions affecting only individual class members, including questions of damages.[8]

There are four factors that the Court must consider in determining whether Plaintiffs have demonstrated that a class action is the superior means for adjudicating the dispute, which are 1) whether there would be an interest by individual class members in prosecuting their actions

---

[8] The Court notes that in the event the calculation of damages is needed, the existence of accurate time-keeping records maintained by Defendants should make damages calculation a relatively easy process.

separately; 2) if class members have other litigation pending about the controversy, the extent and nature of that litigation; 3) the desirability of this forum for the action; and 4) what difficulties would be expected in managing the class. Fed. R. Civ. P. 23(b)(3).

In addressing the first and second of the four superiority factors, the Court notes that as referenced above when considering numerosity, the type of claim at issue here is one that individuals are typically hesitant to prosecute individually if they are still employed by a defendant for fear of reprisal. Additionally, there appears to be no interest by other class members in maintaining the action because there is a statute of limitations issue at play and there is no other pending request to certify this class under the FLSA-analogous provisions of Pennsylvania law. *See Swigart*, 288 F.R.D. at 186. In considering the third factor of whether this is a desirable forum, while most of the class members are likely to reside in Pennsylvania, given that Defendants' operations are centralized within this district and this is where their human resources and payroll functions take place, the Court finds the forum to be a desirable one. Regarding the fourth and final factor, Defendants argue that "[g]iven the individual inquiries associated with each putative class member, managing this case as a class action would be untenable." [Doc. 57, p. 35]. Defendants do not support this argument with any legal authority and the Court does not anticipate any particular difficulty in managing the class, especially considering such actions based on allegations of misclassification are not uncommon. *See Colonial Freight*, 2018 WL 11225871, at *10. Given the proof before the Court at this time, the superiority factors point toward a class action as being the preferred method to address the claims at issue. Having found that Plaintiffs have met the requirements of Rule 23, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Class Action Certification be **GRANTED**.

## IV.    CONCLUSION[9]

For the reasons set forth above, the Court **RECOMMENDS** that the portion of Plaintiffs

Motion [Doc. 45] requesting conditional collective certification under the FLSA be **GRANTED**

in the specific manner set forth above, and that the portion requesting class certification under Fed.

R. Civ. P. 23 likewise be **GRANTED**.

Respectfully Submitted,


/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[9] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party.  28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985).   The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).